JADS, INC v DETROIT

PEOPLE v MANOLAKAS

PEOPLE v LARUE

OPINION OF THE COURT

1. STATUTES—EJUSDEM GENERIS—CRIMINAL LAW.

Under the doctrine of *ejusdem generis* a cabaret is not a "public place" as that term is used in an ordinance that gives specific examples made up of "streets, lanes, alleys, markets", and which prohibits indecent exposure in "public places".

2. STATUTES—CRIMINAL LAW.

In an ordinance prohibiting immoral dancing in cabarets which defines a cabaret as a place where the patrons are provided with entertainment or space for dancing, the word "dancing" refers to the conduct of patrons and the word "entertainment" refers to the conduct of employees.

CONCURRENCE BY BORRADAILE, J.

3. STATUTES—NOTICE OF CONDUCT.

*The United States Supreme Court opinion of February 24, 1972, requires that an ordinance give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden, thereby discouraging arbitrary and erratic arrests and convictions.*

Appeal from Wayne, Joseph G. Rashid, J. Submitted Division 1 May 8, 1972, at Detroit. (Docket Nos. 12072, 12087, 12182.) Decided July 3, 1972.

REFERENCES FOR POINTS IN HEADNOTES

[1] 50 Am Jur 2d, Lewdness, Indecency, and Obscenity §§ 16–18.

50 Am Jur, Statutes § 249.

Criminal offense predicated upon indecent exposure, 94 ALR2d 1353.

[2] 4 Am Jur 2d, Amusements and Exhibitions § 23.

[3] 16 Am Jur 2d, Constitutional Law § 552.

Complaint by Jads, Inc., against the City of Detroit, John F. Nichols, Commissioner of the Detroit Police Department, and Michael M. Glusac, Corporation Counsel of the City of Detroit, for a declaratory judgment that certain city ordinances do not apply to "topless go-go dancing" or they are unconstitutional. Judgment for defendant. Plaintiff appeals. Remanded for judgment for plaintiff. (Docket No. 12072.)

Tyra Lee LaRue was convicted of indecent exposure and Theodore Manolakas was convicted of permitting immoral dancing in his establishment. Both convictions were in Traffic and Ordinance Division of Recorder's Court of Detroit. Convictions affirmed by the circuit court. Defendants appeal by leave granted. Reversed. (Docket Nos. 12182, 12087.)

*Ivan E. Barris* and *Carl P. Ranno,* for Jads, Inc., Theodore Manolakas, and Tyra Lee La Rue.

*Michael M. Glusac,* Corporation Counsel, and *Thomas H. Gallagher* and *William P. Doran,* Assistants Corporation Counsel, for the city of Detroit.

Before: DANHOF, P. J., and LEVIN and BORRADAILE,* JJ.

LEVIN, J. In these consolidated cases we hold that "topless go-go dancing" does not violate City of Detroit ordinances.

On May 14, 1969, defendant LaRue was performing her final dance of the night. She stripped off

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

the two "pasties" (each was one-half of a flesh-colored bandaid) which had covered the nipple areas of her breasts, and danced totally nude above the waist. She was clad in black leotard tights below the waist.

A police officer, who was present during the entire performance, issued a ticket to LaRue when she removed her bandaids. She was charged, in the terms of the ordinance, with "indecent exposure of * * * her person in the streets, lanes, alleys, markets or public places of the city".[1] Defendant Manolakas, too, received a ticket—in his case for "permit[ting] any immoral, vulgar, suggestive, improper or freak dancing" in his establishment.[2]

Both defendants appeared in traffic court, where they were found guilty by a jury's verdict. Their convictions were affirmed by the circuit court.

Following the convictions of LaRue and Manolakas, plaintiff Jads brought an action for a declaratory judgment alleging that it operates an establishment featuring "topless go-go dancing", and that if such entertainment is prohibited its business will suffer serious economic injury. Jads seeks a judgment declaring that the ordinances relied on by the city do not apply to "topless go-go dancing" or that they are unconstitutional. The circuit judge held against Jads' claims.

A number of constitutional infirmities in the ordinances are urged upon us. We are told that our decision will have important ramifications on

---

[1] "No person shall make any indecent exposure of his or her person in the streets, lanes, alleys, markets or public places of the city." Detroit City Code, § 39-1-26.

[2] "The following rules and regulations shall, where applicable, govern all types of establishments licensed under this article and no operator or his agent or employee shall: * * *

"(c) Permit any immoral, vulgar, suggestive, improper or freak dancing." Detroit City Code, § 5-4-7.

the right of free expression.[3] Our disposition of this appeal makes it unnecessary, however, for us to reach the constitutional questions.

LaRue was convicted of indecently exposing herself "in the streets, lanes, alleys, markets or public places of the city". The Sip 'n Chat Bar is not a "public place" within the meaning of the ordinance. Two principles are applicable:

—The first is that penal statutes are to be strictly construed in favor of the defendant;[4] legislation declaring behavior criminal ought to be so "plain and unambiguous that 'he who runs' may read, and understand whether his conduct is in violation of its provisions". *People v Ellis,* 204 Mich 157, 161 (1918).

—The second is the doctrine of *ejusdem generis.* "Literally, that phrase means 'of the same kind or species.' It is a well known maxim of construction, sometimes called Lord Tenterden's Rule, to aid in ascertaining the meaning of a statute or other written instrument, and, under the maxim, where an enumeration of specific things is followed by a more general word or phrase, such general word or phrase is held to refer to things of the same kind, or things that fall within the classification of the specific terms." [5]

---

[3] See *In re Giannini,* 69 Cal 2d 563; 72 Cal Rptr 655; 446 P2d 535 (1968); *Glancy v Sacramento County,* 17 Cal App 3d 504; 94 Cal Rptr 864 (1971).

[4] *People v Kirstein,* 6 Mich App 107 (1967); *People v Brown Brothers Equipment Co, Inc,* 3 Mich App 618 (1966), aff'd 379 Mich 363 (1967).

Similarly, see *Lanzetta v New Jersey,* 306 US 451; 59 S Ct 618; 83 L Ed 888 (1939); *Baggett v Bullitt,* 377 US 360; 84 S Ct 1316; 12 L Ed 2d 377 (1964).

[5] *Bumpus v United States,* 325 F2d 264, 267 (CA 10, 1963); See *People v Powell,* 280 Mich 699; 111 ALR 721 (1937); *Brooks v Cook,* 44 Mich 617 (1880).

Without in any way attempting to define the exact limits of the term "public places" we simply conclude that a cabaret does not fit within the class of specific examples in this ordinance: streets, lanes, alleys and markets.[6]

The city's argument is based on language employed by the Michigan Supreme Court in *People v Kratz*, 230 Mich 334, 339 (1925). The statute in that case prohibited "open, indecent or obscene exposure" of the person. The issue before the Supreme Court was the meaning of the word "open". Indeed, the Court specifically noted: "The statute makes no reference to place, either public or private". This precedent is not instructive on the issue now presented.

Defendant Manolakas was convicted of violating the city ordinance (see fn 2) providing that no operator of a cabaret shall permit "any immoral, vulgar, suggestive, improper or freak dancing". The inapplicability of this ordinance becomes apparent upon an examination of the entire article dealing with cabarets.[7]

Cabarets are defined as:

"Any place wherein food and any type of alcoholic beverage is sold or given away on the premises and the operator thereof holds a yearly license from the state to sell such beverages by the glass and where the patrons are provided *with entertainment or space for dancing.*" (Emphasis supplied.) Detroit City Code, § 5-4-1.

---

[6] The general language in the ordinance at issue here is significantly different from the language of the statute in *In re Mosby*, 360 Mich 186, 190 (1960):

" 'The following are declared to be causes for suspension, demotion or removal of any employee in the classified civil service, *though charges may be based upon causes other than those herein enumerated.*' " (Emphasis by the Court.)

[7] Detroit City Code, ch 5, art IV.

The emphasized words highlight a distinction followed throughout the cabaret article—the distinction between entertainment and dancing.[8] As used in this article, the word "dancing" refers to the conduct of patrons, and the word "entertainment" refers to the conduct of employees.

Apart from consistency of language, a contrary holding would lead to an incongruous result. We are persuaded that the Detroit Common Council did not single out dancing from all other forms of

---

[8] "*No dancing or entertainment* shall be permitted in any cabaret or club cabaret between the hours of 2:00 a.m. and 7:30 a.m., Eastern Standard Time; provided, that the exceptions in the Michigan Liquor Control Act governing hours of operation on December 24th and 25th annually and the regulations of the state liquor control commission governing hours of operation on January 1st shall prevail on the aforementioned dates." (Emphasis supplied.) Detroit City Code, ch 5, art IV, § 5-4-11.

"The holders of a Group B, club cabaret license shall be permitted to admit minors between the ages of seventeen and twenty-one years of age to *any dance* or *entertainment* conducted in the premises of such club cabaret; provided:

"(a) No liquor or other alcoholic beverages is sold, consumed or exhibited or otherwise carried into the premises where such dance or entertainment is permitted.

"(b) That the room where liquor or other alcoholic beverage is kept on the premises is completely separated from the portion of the premises where such minors are permitted *dancing or entertainment* and entrance thereto is barred by locked or sealed doors. Entrance to such area shall be separate from other portions of the premises.

"(c) That such area shall have separate toilet facilities for both sexes, accessible from the *dance or entertainment* area, as herein described.

\*   \*   \*

"(e) That a permit is secured for each *dance or entertainment* from the commissioner of police of the city, who shall not issue such permit unless the premises is a suitable and proper place in which minors may congregate and that the *dance or entertainment* is suitably and properly supervised, in accordance with article 5 of this chapter." (Emphasis supplied.) Detroit City Code, ch 5, art IV, § 5-4-10.

*Cf.*, also, Detroit City Code, ch 5, art IV, § 5-4-7 (d):

"Allow or permit any person to smoke or hold a lighted cigar, cigarette or pipe on the dance floor while *dancing* is permitted." (Emphasis supplied.)

entertainment for special treatment. Topless songs, monologues, or juggling are lawful, we are told, but, if the entertainer's feet break into a dance, the operator of the cabaret is subject to prosecution. We avoid chimerical constructions.

We intimate no opinion on the questions whether LaRue could have been properly charged under the state indecent-exposure statute, which contains no "public place" limitation,[9] or whether the Detroit Common Council might constitutionally adopt an ordinance regulating or prohibiting "topless go-go dancing".

The convictions of LaRue and Manolakas are reversed. On remand a declaratory judgment shall be entered granting Jads a judgment declaring that the ordinances in question do not prohibit topless go-go dancing.

Reversed; and remanded as to Jads for further proceedings consistent with this opinion.

DANHOF, P. J., concurred.

BORRADAILE, J. *(concurring).* I concur in the result because under the language of *Papachristou v Jacksonville,* 405 US 156; 92 S Ct 839; 31 L Ed 2d 110 (1972), it does not appear that § 39-1-26 or § 5-4-7 of the Detroit City Code gives a person of ordinary intelligence fair notice that this contemplated conduct is forbidden by the ordinance and because it encourages arbitrary and erratic arrests and convictions.

---

[9] "Any person who shall knowingly make any open or indecent exposure of his or her person or of the person of another shall be guilty of a misdemeanor." MCLA 750.335a; MAS 28.567(1).